## In re YOUNG.

(District Court, E. D. North Carolina. January 8, 1906.)

BANKRUPTCY—ALLOWANCE OF ATTORNEY'S FEES.

Bankr. Act July 1, 1898, c. 541, § 64b, cl. 3, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], which provides for the allowance of "one reasonable attorney's fees for the professional services actually rendered" to the petitioning creditors in involuntary cases, and to the bankrupt while performing the duties prescribed by the act, and to the bankrupt in voluntary cases, is to be construed in harmony with the general purpose of the act, which is to secure the equal distribution of the assets of an insolvent among his creditors at a minimum of expense. It authorizes the allowance of one reasonable fee only to the petitioning creditors or the bankrupt as reimbursement, and fees will not be allowed on account during the administration of an estate on petition of attorneys and without notice to parties interested.

In Bankruptcy. On petition for allowance of attorney's fees, and referee's report thereon.

Godwin & Davis, for petitioning creditors.
Stewart & Godwin, for the bank.
J. C. Clifford and D. T. Oates, for E. F. Young.
F. H. Brooks, for general creditors.
H. L. Cook, for trustee.

PURNELL, District Judge. A petition is now filed by attorneys for petitioning creditors, before the estate is ready to be closed, and without notice to any one, asking for an allowance of $800 attorney's fees, and the referee herein recommends the allowance "on account" of $400. In the petition is set out expenses incurred, trips to several of the courts in the district, and many matters of detail. It is also stated therein:

"According to the usual practice of this court, it has been the custom to make allowances only when an estate is finally closed, but in this instance it would work a hardship to your petitioners to keep them without pay for services rendered covering a period of something like 18 months, and compel them to wait until the case is finally disposed of, which in all likelihood will not be for over 12 months to come."

If attorneys will examine the act of Congress known as the "Bankrupt Law" (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), and give the court some credit for trying to construe the same according to the true intent thereof, they will follow the rules promulgated, cease from filing petitions for fees they know the court will not allow in violation of the usual custom, and stop charging up expenses for which the act makes no provision for payment out

of the estate, all of which has been decided in former cases by this court. The court will follow its usual practice, and disallow this petition and the recommendation of the referee. The court has remarked once or twice, during the pendency of this proceeding, that there were many unnecessary motions which were utterly without merit, and, if made with a view of asking for an allowance to attorneys when the estate was closed, that the court would recall the fact that counsel had unnecessarily incumbered the record and the estate, evidently with this view.

The fact that these petitions have become more and more a plague and perplexity to the court has induced another examination of the statute on the subject, the result of which proves the truth of Blackstone's saying to his readers and students of the law, to the effect that they may not understand the commentaries on the first, or even on the second, reading, but possibly on a third or fourth reading the true intent and meaning of the law will appear to them clear. The court has re-read the act and reached the conclusion that a different construction from that which attorneys and many of the courts put upon the provision for attorney's fees should be given this statute.

Section 64b, cl. 3 (30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), provides, under the head of "Cost of Administration":

"One reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases, as the court may allow."

This confers on the court a judicial discretion, to be exercised according to the true intent and meaning of the act as it may be gathered from the four corners thereof. The question arises, what did Congress mean by the provision quoted? It certainly did not mean to encourage the taking of cases on contingent fees, or speculating on what the court might allow. Such practice is considered reprehensible by most of the profession, and discouraged by the courts. It certainly does not commend itself to this court. Congress evidently meant, which may be reasonably inferred from the wording of the section, keeping in mind the other provisions of the statute (the evident legislative intention to make the administration of the bankrupt act as economical as possible and secure to creditors the largest dividend the assets of the estate would pay), to reimburse first the petitioning creditors and the bankrupt in involuntary cases, while performing a duty required of him, and to make good to the voluntary bankrupt what he had paid out of the personal property exemption allowed by the law of his domicile. The statute does not authorize the payment of any fee to an attorney, but expressly says, to the petitioning creditors, to the bankrupt while performing the duties in involuntary cases and in voluntary cases, as the court may allow. The allowance evidently is intended to reimburse the petitioning creditors and the bankrupt, and not to encourage a speculative practice of the law. Throwing or forcing a citizen or a firm into bankruptcy is more serious than many attorneys who file these petitions seem to think. It frequently breaks up a happy home, and places

a stigma on a good name it has required years to establish. It was never intended either should be done on speculative principles. This being so, and the statute bearing this construction, this court will in the future require the petitioning creditors to ask for the allowance of an attorney's fee, or the bankrupt, as the case may be, and in no case allow such fee on an unverified ex parte petition, without notice, as is asked in the case at bar.

The principal object of the bankrupt law was to secure to creditors their portion of the bankrupt estate and at a minimum cost. It was never intended by Congress to vest in the courts the authority to give away the assets of an estate to attorneys, or any one else, to the detriment of the creditors, and certainly not, on an ex parte petition without notice, to dispense the assets of an estate as favors to members of the profession. But a short time ago the folly of this practice was demonstrated in this court. A petition for attorney's fee for the bankrupt was filed, apparently in good faith, and disallowed. The fact developed in a few days that petitioner's firm had received a large fee for aiding the bankrupt in an assignment in fraud of his creditors and in violation of the bankrupt act.

The former rules laid down by this court have to some extent been attempted to be disregarded, both by attorneys and referees. They will be, as they have been, strictly enforced, with the additional requirement herein added in accordance with the statute. Referees who persist in disregarding the rules, by making recommendations in violation thereof to harass, annoy, and embarrass the court, will be removed from office. No attorney's fee will be allowed except upon notice to parties interested, and upon petition by, or recommendation of, parties mentioned in the statute. This ruling is in accord with the holding of the appellate courts in some of the states, especially in Virginia. In North Carolina no tax fee is allowed. It is a fair and proper construction of the statute as this court reads it. It is in keeping with the true intent of the bankrupt act, for economy in the administration thereof.

Petition disallowed and dismissed.

A copy of this opinion will be furnished referees, who are required to follow the rule heretofore and herein adopted.