## HASBROUCK v. LAFEBRE ET AL.

(No. 802;  Decided October 13th, 1915;  152 Pac. 168.)

Chattel Mortgages—Validity as Between Parties—Permission to Sell Mortgaged Goods in Course of Business—Verbal Agreements Relating to Sales—Mortgagor's Management—Assignment for Creditors—Insolvency Law—Bankruptcy—Suspension of State Insolvency Laws by Federal Bankruptcy Act—Right of Mortgagee Against Assignee for Creditors—Replevin.

1. A chattel mortgage given upon a stock of merchandise without inserting an express permission to the mortgagor to use, manage, control and sell from the stock in the course of business, as provided by Compiled Statutes 1910, Sec. 3734, but which mortgage was filed with the public recorder, as required by Compiled Statutes 1910, Sec. 3727, and sales were thereafter made from the stock in the course of business, the stock being replenished by the mortgagor for the benefit of the mortgagee pursuant to an oral agreement existing between the parties, was not void *ab initio* for failure to express a sales permission in the instrument, Section 3734 not declaring such mortgages void and the mortgage being valid, as between the parties, under Compiled Statutes 1910, Sec. 3732.

2. Compiled Statutes 1910, Chapter 212, is in legal effect an insolvency law under suspension by the National Bankruptcy Act (Act. Cong. July 1st, 1898, Ch. 541, 30 Stat. 544) and all proceedings under it by an assignee claiming a right of possession under a deed of assignment for the benefit of creditors are void, as against the holder of a prior chattel mortgage lien suing in replevin, such assignment being statutory and not valid as a common-law assignment.

3. A mortgagor of a stock of merchandise cannot avoid his mortgage on the ground that a verbal permission given him to manage the property and sell from the stock in the course of trade was not incorporated in the instrument, since the mortgage was good as between the parties; it was also good as against a statutory assignee for creditors, such assignee succeeding only to the rights of the assignor.

Error to the District Court, Sheridan County; Hon. C. H. Parmelee, Judge.

The material facts are stated in the opinion.

*Fred H. Blume,* for plaintiff in error.

The agreement made at the time of the execution of the chattel mortgage was an agreement hindering, delaying and defrauding creditors, thus making the mortgage void. A chattel mortgage permitting the sale of the mortgaged goods without requiring the proceeds to be applied on the indebtedness is void on its face. (Claflin v. Foley, 22 W. Va. 434; Stattuck v. Knight, 25 W. Va. 590; Roden & Cave v. Norton & Co., 128 Ala. 129, 29 So. 637; Gilbert v. Peppers, 65 W. Va. 793, 64 S. E. 361, 36 L. R. A. (N. S.) 1181; Bump Fraudulent Con. (4th Ed.), Sec. 117; Vol. 5, Ency. of Law, p. 994, and cases cited in note.) The mortgage was fraudulent in fact. (Bank v. Bates, 120 U. S. 561, 7 Sup. Ct. 679; Bulger v. Rosa, 119 N. Y. 459, 24 N. E. 853; First Nat. Bank v. North, 2 S. D. 480, 51 N. W. 96.) When the facts are undisputed, the question of intent does not enter into the validity of a mortgage. (*In re* Standard T. & E. Co., 157 Fed. 106 (Wis.); Dobyns v. Meyer, 95 Mo. 132, 8 S. W. 251, 6 A. S. R. 32; A. Blanton Grocery Co. v. Taylor (N. C.), 78 S. E. 276; Cowan v. Phillips, 119 N. C. 28, 25 S. E. 711; Holmes v. Marshall, 76 N. C. 264; Will T. Little Co. v. Burnham, 5 Okl. 283, 49 Pac. 66; McTeer v. Huntsman (Tenn.), 49 S. W. 57; Dunham v. Cramer, 63 N. J. Eq. 151, 51 Atl. 1011.) In Alabama such mortgages are held to be absolutely void. (Owens v. Hobbie, 82 Ala. 466, 3 So. 145; McDermott v. Eborn, 90 Ala. 260, 7 So. 751; O'Neil v. Brewing Co., 101 Ala. 388, 13 So. 576; Christian & Craft G. Co. v. Michael, 121 Ala. 84, 25 So. 571, 77 Am. St. Rep. 30; Roden v. Norton, 128 Ala. 129, 29 So. 637; Cross v. Berry, 132 Ala. 92, 31 So. 36; Gillespie v. McClesky, 160 Ala. 289, 49 So. 362; Albes v. Keith (Ala.), 44 So. 693.) Also in Colorado. (Wilcox v. Jackson, 7 Colo. 721, 4 Pac. 966; Wilson v. Voight, 9 Colo. 614, 13 Pac. 726; Wile v. Butler, 4 Colo. App. 154, 34 Pac. 1111; Wilson v. Jones, 20 Colo. App. 317, 78 Pac. 622; Wellington v. Terry, 38 Colo. 285, 88 Pac. 467; Dodge v. Norlin, 133 Fed. 363, 66 C. C. A. 425 (Colo.) And Connecticut. (Gaylor v. Harding, 37

Conn. 516 (Bump F. Convey., p. 127.)   Florida: (Eckman
v. Munnedyn, 32 Fla. 367, 13 So. 922.)   Indiana; (New v.
Sailors, 114 Ind. 407, 16 N. E. 609; Stout v. Price, 24 Ind.
App. 360, 55 N. E. 964; Wilson v. Sullivan, 58 N. H. 200.)
Idaho; (Lewiston Nat. Bank v. Martin, 2 Idaho, 734, 23
Pac. 920; Ryan v. Rogers, 14 Idaho, 309, 94 Pac. 427.)
Illinois; (Huschle v. Morris, 131 Ill. 587, 23 N. E. 643;
Simmons. v. Jenkins, 76 Ill. 479; Barrett v. Fergus, 51 Ill.
352, 99 A. D. 547; Greenebaum v. Wheeler, 90 Ill. 296.)
Kansas; (Standard Imp. Co. v. Schultz, 45 Kan. 52, 25 Pac.
625; Brown v. Barber, 47 Kan. 527, 28 Pac. 184; Humph-
rey v. Mayfield, 63 Kan. 208, 65 Pac. 234.)   Minnesota;
(Gallagher v. Rosenfield, 47 Minn. 507, 50 N. W. 696;
Citizens State Bank of Tracey v. Brown, 110 Minn. 276,
124 N. W. 990; Pabst Brewing Co. v. Butchard, 67 Minn.
191, 69 N. W. 809, 64 Am. St. Rep. 408.)   Missouri;
(Hardware v. Riddle, 84 Mo. App. 275 (paying other
debts): Bank v. Lumber Co., 134 Mo. 432, 34 S. W. 869;
Gee v. Drug Co., 105 Mo. App. 27, 78 S. W. 288; Bank v.
Anderson, 100 Mo. App. 567, 75 S. W. 189; Guthrel v.
Guthrel (Mo. App.), 132 S. W. 274; Embree v. Roney,
152 Mo. App. 257, 133 S. W. 83; Rubber Mfg. Co. v.
Supply Co., 140 Mo. 538, 50 S. W. 912; McDonald v.
Hoover. 142 Mo. 484, 44 S. W. 334.)   Montana; (Roche-
leau v. Boyle, 11 Mont. 469, 28 Pac. 873; Stevens v. Cur-
ran, 28 Mont. 366, 72 Pac. 753.)   Maryland; (Edelhoff v.
Mfg. Co., 86 Md. 595, 39 Atl. 314.)   Mississippi; (Ander-
son v. Partee, 79 Miss. 80, 29 So. 788; First Nat. Bank v.
Coperton, 74 Miss. 857, 22 So. 60, 60 A. S. R. 542; W. B.
Belknapp & Co. v. Lyell (Miss.), 42 So. 799; Newton &c.
Co. v. Carr (Miss.), 52 So. 353.)   Nebraska; (Brinker v.
Ashenfelter, 1 Neb. (Unoff.) 793, 95 N. W. 1124; Tallon
v. Ellison, 3 Neb. 63, 75; Buckstaff Bros. Mfg. Co. v.
Snyder, 54 Neb. 538, 74 N. W. 863; Sherwin v. Gaghagen,
39 Neb. 238, 57 N. W. 1005; Paxton v. Smith, 41 Neb.
56, 59 N. W. 690.)   Nevada; (Lutz v. Kinney, 24 Neb.
38, 49 Pac. 453, 50 Pac. 1031.)   New Hampshire; (Putnam
v. Osgood, 51 N. H. 192, 52 N. H. 148; Locke v. New

England B. Co. 73 N. H. 492, 63 Atl. 178.)   New York;
(Skilton v. Covington, 185 N. Y. 80, 77 N. E. 790, 113 A.
S. R. 885; Zartman v. Bank, 189 N. Y. 267, 82 N. E. 127,
12 L. R. A. 1083 (N. S.); Mandeville v. Avery, 124 N. Y.
376, 26 N. E. 951, 21 A. S. R. 678; Hengen v. Hachemeis-
ter, 114 N. Y. 566, 21 N. E. 1046, 5 L. R. A. 137; Potts v.
Hart, 99 N. Y. 168, 1 N. E. 605; Hardt v. Deitch, 48 N.
Y. S. 564; Southard v. Banner, 72 N. Y. 424; Newman v.
Peyser, 141 N. Y. S. 422; Robson v. Daily, 130 N. Y. S.
1036; Briggs v. Gelm, 106 N. Y. S. 693; *In re* Davis, 155
Fed. 671; Zartman v. Bank, 96 N. Y. S. 633.)   North Car-
olina; (A. Blanton Grocery Co. v. Taylor (N. C.), 78 S. E.
276; Cowan v. Phillips, 119 N. C. 28, 25 S. E. 711; Holmes
v. Marshall, 76 N. C. 264; Edwards v. Supply Co., 150
N. C. 172, 63 S. E. 742.)   North Dakota; (Bergman v.
Jones, 10 N. D. 520, 88 N. W. 284, 88 A. S. R. 739; Mad-
son v. Rutten, 16 N. D. 281, 113 N. W. 872, 13 L. R. A.
(N. S.) 554.)   Ohio: (Collins v. Myers, 16 Ohio, 547; Fre-
man v. Rawson, 5 Ohio St. 1; Enck v. Gerding, 67 O. S.
245, 65 N. E. 880.)   Oklahoma; (Will T. Little v. Burham,
5 Okl. 283, 49 Pac. 66.)   Oregon; (Bremer v. Fleckenstein,
9 Or. 266; Greig v. Mueller (Or.), 133 Pac. 94; Orton v.
Orton, 7 Or. 478, 33 A. R. 717.)   Tennessee; (Tennessee
Nat. Bank v. Ebert, 9 Heisk. 153; McTeer v. Huntsman,
49 S. W. 57; Robinson v. Baugh, 61 S. W. 98; Moore v.
Wood, 61 S. W. 1063.)   Texas; (Wilbur v. Kray, 73 Tex.
533, 11 S. W. 540; Nat. Bank v. Lovenberg, 63 Tex. 645.)
Utah; (McKibbin v. Brigham, 18 Utah 78, 55 Pac. 66;
Nelden J. D. Co. v. Bank (Utah), 74 Pac. 195.)   West
Virginia; (Claffin v. Foley, 22 W. Va. 434; Garden v.
Bodwing, 9 W. Va. 121; Kuhn v. Mack, 4 W. Va. 186;
Conaway v. Stealy, 44 W. Va. 163, 28 S. E. 793; Etheridge
v. Sperry, 139 U. S. 266, 11 Sup. Ct. 563, 35 L. Ed. 171;
Gilbert v. Peppers, 65 W. Va. 355, 64 S. E. 361, 36 L. R. A.
(N. S.) 1181; Ritchie Co. Bank v. McFarland, 183 Fed.
715, 106 C. C. A. 153, 174 Fed. 859 (W. Va.)   Virginia;
(Hughes v. Effinger & Co. v. Eppling, 93 Va. 424, 25 S. E.
105; Gray v. Atlantic T. & Co., 113 Va. 580, 75 S. E. 226.)

Wisconsin; (Anderson v. Patterson, 64 Wis. 557, 25 N. W. 541; Bank of Kanbauna v. Joannes, 98 Wis. 321, 73 N. W. 997; Charles Baumbach Co. v. Hobkirk, 104 Wis. 488, 80 N. W. 740; Durr v. Landau, 108 Wis. 401, 84 N. W. 437; Franzke v. Hitchson, 105 Wis. 1, 80 N. W. 931; *In re* Thorsen, 209 Fed. 961 (Wis.); Knapp v. Trust Co., 162 Fed. 672, 89 C. C. A. 467, 216 U. S. 545, 30 Sup. Ct. 412; *In re* Standard T. & E. Co., 157 Fed. 106; Batts v. Peacock, 23 Wis. 359; Place v. Langworthy, 13 Wis. 629.) The Wyoming Legislature evidently intended to have such mortgages deemed fraudulent. (Comp. Stats. 3734; Sec. 13, Chap. 7, Laws 1890-91.) Unless it is expressly otherwise stated in the mortgage, all proceeds must be paid to the mortgagee. If not void, the mortgage should have been held to have been paid in full. The sum of $8,000 was realized on the sale of mortgaged goods, which should have been applied as far as necessary to discharge the mortgage debt. The mortgagee consented that it need not be applied. A creditor has a right to extend credit upon the presumption that the law will be complied with. A mortgagee should not be permitted to say that he did not intend to violate the law. (Anderson v. Patterson, 64 Wis. 557, 25 N. W. 541.) This court has held that where the chattel mortgage law is not complied with, it is void as to creditors. (Bank v. Woodworth, 7 Wyo. 20, 49 Pac. 406.) The doctrine of constructive payments should be applied. (Newton Oil Co. v. Carr (Miss.), 52 So. 353; Stout v. Price, 24 Ind. App. 360, 55 N. E. 964, 56 N. E. 857; Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 793; Conkling v. Shelly, 28 N. Y. 360, 84 Am. Dec. 348; Ellsworth v. Phelps, 30 Hun, 646; *In re* Thorsen Bros., 209 Fed. 961.) A statutory assignee may attack such mortgages. (Secs. 3367-71-76-77-82-72--91-94, Comp. Stats.) The assignee represents the creditors only. (Patterson v. Lee Clark Anderson Co., 7 Wyo. 406, 52 P. 1085; Bump. Fraud. Conv. (4th Ed.), Sec. 326; Haines v. Tiffany, 25 Ohio St. 549; Moore v. Williamson, 44 N. J. Eq. 496, 1 L. R. A. 336, 15 Atl. 587; Pillsbury v. Kingon, 38 N. J. Eq. 287;

R'eceiver v. Spielman, 50 N. J. Eq. 120, 24 Atl. 571; Wumpheimer v. Perine (N. J.), 47 Atl. 769, 50 Atl. 356; Grant v. Crowell, 42 N. J. Eq. 524, 9 Atl. 201; Schaller v. Wright, 70 Ia. 667, 28 N. W. 460; Estbrook v. Messersmith, 18 Wis. 545; Flower v. Cornish, 25 Minn. 473; Chapin v. Jenkins, 50 Kan. 385, 31 Pac. 1084; Kilbourne v. Keller, 29 O. S. 264; Waters v. Dashiel, 1 Md. 455; Teams v. Bullitt, 35 Pa. St. 308; Freeland v. Freeland, 102 Mass. 475; Southard v. Benner, 72 N. Y. 424; Walton v. Eby, 53 Kan. 257, 36 Pac. 257; Seibert v. Milligan, 110 Ind. 106, 10 N. E. 929; Cooper v. Perdue, 114 Ind. 207, 16 N. E. 141; Grant v. Crowell, 42 N. J. Eq. 524, 9 Atl. 201.) Our statute is apparently taken from Indiana and the decisions of that state sustain the right of an assignee to recover as against such mortgages. (Cooper v. Perdue, 114 Ind. 207, 16 N. E. 140; Sealres v. Little, 153 Ind. 432, 55 N. E. 93. See also Bank v. Solyer, 4 Okl. 408, 50 Pac. 76; Taylor v. Lauer, 127 N. C. 157, 37 S. E. 197; Walton v. Inv. Co., 131 S. W. 275, 140 Ky. 472; Grand Ave. Bank v. Trust Co., 135 Mo. App. 366, 115 S. W. 1071; Gallagher v. Rosenfield, 47 Minn. 507, 50 N. W. 696; Kellogg v. Shelly, 69 Minn. 124, 71 N. W. 924; In re St. Paul &c. Co., 94 N. W. 218; In re Standard T. & E. Co., 157 Fed. 106.) In construing the Montana and California cases it should be remembered that statutes providing for assignments of insolvency and assignments for the benefit of creditors are in effect there. (Ruggles v. Cannedy (Cal.), 53 Pac. 916.) The Wyoming statute has the effect of the California insolvency law and is intended for the protection of creditors.

*Burgess & Kutcher,* for defendants in error.

There was no actual fraud in the transaction nor intent to hinder, delay or defraud anybody; no one was in fact defrauded, hindered or delayed by the mortgage in question; sales were made from the stock and the stock was replenished from time to time. There was no fraud in fact and that is the only question touching the validity of this

mortgage. (Patterson v. Lee-Clark-Andreeson Co., 7 Wyo. 401; Bank v. Stewart, 86 Pac. 623; Huntley v. Kingman, 152 U. S. 527, 38 Law Ed. 540; Donahue v. Campbell, 83 N. W. 469; Lepin v. Coon, 74 N. W. 1079 (Neb.) This is not a case where something was omitted from a mortgage which resulted in fraud upon creditors; the oral agreement permitting sales, deducting expenses and the replenishment of the stock was not fraudulent for the reason that the statute permits that very thing, hence our inquiry as to the effect of omitting the agreement of the mortgage itself. No mortgage of this kind has been held invalid in the absence of fraud in fact. (Etheridge v. Sperry, 139 U. S. 266, 35 Law Ed. 171; Meyer v. Shenkberg, 80 N. W. 126 (S. D.) ; Bank v. Boot & Shoe Co.; 79 N. W. 880 (N. D.) ; Ephraiham v. Kelleher, 29 Pac. 985; Van Winkle v. Mitchum, 119 Pac. 748; Jaffray v. Greenbaum, 20 N. W. 775; Noyes v. Ross, 59 Pac. 367; Burford v. Bank, 66 N. E. 78 (Ind.) ; Whitson v. Griffis, 17 Pac. 801; Williams v. Mitchell, 58 Pac. 1026; Dunham v. Stevens, 60 S. W. 1064; Oliver v. Eaton, 7 Mich. 107a; Adler &c. v. Phillips, 37 S. W. 297.) The cases cited by opposing counsel from states referred to in his brief are easily distinguishable from the case at bar. It will be observed that those cases involve mortgages permitting sales by the mortgagor for his own use and benefit and without any requirement of accounting for the proceeds for application thereof on the mortgage debt. Independent of statute the mortgage in question is valid; Sec. 3734, Comp. Stats. 1910, authorizes the very thing that was done by the mortgagor in this case, so whatever the effect of failure to insert permission to sell may be, the mortgage is not void or fraudulent as to other creditors, and the statute sweeps aside the whole contention of opposing counsel in this regard. The second idea expressed in the statute, the replacement of property, appears from the face of the mortgage. The mortgage contemplates a going concern. (Graham v. Hendricks, 22 La. Ann. 524.) Even if the statute is not complied with, a creditor cannot complain unless he

can show injury. (Fleisher v. Hinds, 9 S. W. 25; Brackett v. Harvey, 91 N. Y. R. 214.) The plaintiff is not a creditor and therefore not in a position to attack the mortgage. (4 Cyc. 258; Ensteins' Sons v. Shause, 5 So. 384; Stewart v. Platt, 25 Law Ed. 818; Hodgson v. Liblery, 43 Atl. 312; Steinbach v. Junk, 39 S. W. 530; Lancaster County Bank v. Gillilan, 68 N. W. 352; Hooven v. Burdette, 39 N. E. 1008; Sheldon v. Wickham, 55 N. E. 1045; Case v. Campbell, 13 Pac. 324 (Ore.); Gluck v. Therme, 134 N. W. 440 (Ia.); Wilson v. Esten, 14 R. I. 621; Downey v. Company, 131 Am. St. Rep. 398 (Mass.); Grube v. Lilienthal, 29 S. E. 230 (S. C.); Cincinnatti &c. v. Combs, 58 S. W. 420 (Ky.); Wakeman v. Barrows, 2 N. W. 50 (Mich.); Show v. Glen, 37 N. J. Eq. 32; Evans v. Turner, 45 S. W. 654 (Mo.); Hawks v. Pritzlaff, 7 N. W. 303 (Wis.) Hasbrouck is a volunteer, representing only such creditors as may elect to file their claims with him. The assignment statute does not give the assignee power to attack the mortgage; his powers are no greater than at common law. (Sec. 3382, Comp. Stats. 1910.) Sec. 3394 does not apply; he has no greater rights than his assignor. (Sec. 3393, Comp. Stats. 1910; First Nat. Bank v. Menke, 60 Pac. 675 (Cal.); Babcock v. Maxwell, 74 Pac. 64 (Mont.) He is not a purchaser for value. (Watson v. Donnelley, 28 Barb. 658; Blackstone Commentaries, 241; Falley v. Gribling, 28 N. E. 794; 20 Cyc. 437.) If our assignment statutes are to be construed as an insolvent law they can have no operation and the assignment is void, because the effect of the National Bankrupt Act upon state insurance laws is to suspend them. (5 Cyc. 240.) It is neither alleged or proven who the creditors of Reeder were or are. Hence there is no right shown on the part of anyone to set the mortgage aside; it was not shown whether the claims of creditors were in existence during the period over which the sales were made. The mere filing of claims with the assignee is no evidence of the existence of indebtedness against Reeder prior to their filing. (Willet v.

Malli, 22 N. W. 922; Burton v. Platter, 4 C. C. A. 101; Bank v. Porter, 93 N. W. 391; Hartman v. Weiland, 30 N. W. 815; Bloom v. Moy, 45 N. W. 715; Mining Co. v. Reynolds, 70 Pac. 422; Irish v. Daniels, 110 N. W. 968; Pidcock v. Voorhies, 42 N. W. 646; Patterson v. Lee-Clark-Andreeson, *supra;* Hamrich v. Hoover, 84 N. E. 28; Pitt, Admr., v. Poole, 91 Tenn. 70; Walker v. Pease, 41 N. Y. Sup. 219; Jowers v. Furniture Co., 73 S. E. 415; Lavigne v. Tobin, 72 N. W. 1040 (Nebr.); Ayres v. Woolcott, 92 N. E. 1036 (Nebr.); Lewis v. Holdredge, 76 N. W. 890.) In Brackett v. Harvey, *supra,* the court was considering the doctrine of constructive payment, holding that an assignee for creditors could not invoke the doctrine, also holding that it was necessary to plead and prove the existence of creditors, who had extended credit during the course of the dealing complained of. There is no actual fraud in this case; there is no constructive fraud; no fraud has been attempted; no person has suffered by reason of the mortgage; a reversal would be a gross injustice and tantamount to a fraud upon Mrs. Olson, who paid off the mortgage indebtedness.

*Fred H. Blume,* in reply.

The evidence showed the existence of indebtedness and creditors. The allegation of indebtedness is sufficient. (Knapp v. Company, 216 U. S. 545.) No objections made to the answer by motion or otherwise nor were objections made to the sufficiency of the evidence. The assignee is an officer of the court. His allowances of claims must be presumed to have been regular. Authorities cited relating to filing claims in probate matters cannot affect the case at bar. (Nat. Bank v. Wetmore, 124 N. Y. 241, 26 N. E. 548; Mathews v. Hutchins, 68 N. H. 412, 40 Atl. 1063.) The allowance of a claim by an assignee is a judgment unless objected to as provided by Section 3379. (Rice v. McClure, 74 Mo. App. 379; Elsea v. Pryor, 87 Mo. App. 157; Nanson v. Jacob, 93 Mo. 331, 6. S. W. 246; Wycoff v. Company (Mo. App.), 125 S. W. 550; Mathewson v.

Caldwell, 59 Kan. 126, 52 Pac. 104; 3 Ency. of Law, 139.)
A judgment is evidence of the indebtedness. (20 Cyc. 773;
20 Cyc. 719, 720, and cases cited; Pickett v. Pipkin, 64
Ala. 520; Strong v. Lawrence, 58 Ia. 55, 12 N. W. 74;
Sidensparker v. Same, 52 Me. 481, 83 A. D. 527; Decker
v. Decker, 108 N. Y. 128, 15 N. E. 307; Minnesota T. M.
Co. v. Schack, 10 S. D. 511, 74 N. W. 445; McManomy
v. R. Co., 167 Ill. 497, 47 N. E. 712; Fuller v. Nelson, 35
Minn. 213, 28 N. W. 511; Westcott v. Sioux City, 141
Ia. 453, 119 N. W. 749; Cone v. Belcher (Tex.), 124 S.
W. 149; First Natl. Bank v. Ludvigsen, 8 Wyo. 235, 56
Pac. 904.) The rule as to when a conveyance is void only
as to antecedent creditors is clearly stated in McMannomy
v. Chicago D. & V. Co. (Ill.), 47 N. E. 713.) In the
present case the term creditors includes all creditors of the
assignor existing on date of the assignment. (Mandeville
v. Ovey, 124 N. Y. 376, 26 N. E. 951; Citizens Bank v.
Brown, 124 N. W. 990; Gilbert v. Pepper, 65 W. Va. 793,
64 S. E. 361; Citizens State Bank v. Brown, 110 Minn.
178, 124 N. W. 990; Mandeville v. Grey, 124 N. Y. 376,
26 N. E. 951, 21 A. S. R. 678; Gillespie v. McClesky
(Ala.), 49 So. 362; Cross v. Berry, 132 Ala. 92, 31 So. 36;
First Natl. Bank v. Wittich, 33 Fla. 681, 15 So. 552.) An
assignee represents creditors. (First Natl. Bank v. Lud-
vigsen. 8 Wyo. 235.) Our law is an insolvency law dis-
tinguishable from the common law of assignments. The
statute requires an express statement of permission to sell
during the course of trade, the evident purpose being to con-
vey knowledge to creditors whereby they can protect them-
selves.

SCOTT, JUSTICE.

On October 15, 1912, one C. H. Reeder, who was then
engaged in general merchandising at Dayton, Sheridan
County, Wyoming, borrowed two thousand dollars from the
Citizens' State Bank of Sheridan and gave his promissory
note, signed by C. L. Olson and Grace L. Olson as sureties,
both of whom have since deceased, for that sum payable

one year after date, with interest thereon at the rate of ten per cent per annum, payable semi-annually. In order to indemnify and secure the Olsons, Reeder on the same day executed a chattel mortgage to them on his stock of goods described in the mortgage as follows, viz.: "All the stock of dry goods, notions, groceries, boots and shoes, clothing, drugs and all other merchandise of every description now contained in the two-story frame building situated on lot one (1), block fifteen (15), of Dayton, Wyoming, and all furniture and fixtures belonging or appertaining to the above described business and being in the above described premises, and all other stock of merchandise, furniture or fixtures, *that may be added thereto in the future, and it is further understood by all the parties to this contract that the party of the first part will keep all stock up to the extent of its present value for the benefit of the said parties of the second part."* The mortgagees were granted by the terms of the mortgage the right to foreclose and take possession in case of any default or if at any time he or they felt himself or themselves insecure. This mortgage was duly filed in the office of the county clerk of Sheridan County on the day of its execution. On the same day and coincident with the execution of the mortgage it was verbally agreed by and between Reeder and the Olsons that the former should continue in business as before, and Reeder so continued in business until September 1, 1913, on which day he, never having paid anything on the note to the Citizens' Bank or to the Olsons as indemnity, and being insolvent, assigned all his property, including the stock of goods then in his possession, to Hasbrouck, the plaintiff in error here, for the benefit of his creditors under the provisions of the general voluntary assignment law of this state, that is to say, under the provisions of Chapter 212, p. 830, Comp. Stat. Reeder in his deed of assignment recited that the stock of goods and merchandise so assigned was mortgaged October 15, 1912, in the sum of $2,000 and interest, to the Olsons and further recited that the mortgage was duly filed and that the sum secured thereby was unpaid. In the meantime C. L. Olson

had died, and Grace L. Olson had been appointed adminis-
tratrix of his estate, and thereafter deeming herself insecure
on behalf of the estate and herself, she paid the note in full
and made demand upon the assignee under the chattel mort-
gage for the delivery of the stock of goods so attempted to
be assigned to him and then in his possession, which was
refused, and thereupon she brought this action in replevin
to recover possession of the same. The goods were taken
upon the writ. The action was tried to the court without
the intervention of a jury, and the court found and gave
judgment in favor of Grace L. Olson both in her personal
and representative capacity as administratrix of the estate
of C. L. Olson, deceased. Hasbrouck, the assignee, brings
error. Grace L. Olson having died, Jans J. LeFebre, ad-
ministrator of each estate, was substituted here as and for
defendant in error.

It is contended that the evidence does not sustain the
judgment and that the same is contrary to law. It is argued
by Hasbrouck that the oral agreement between the parties to
the mortgage to the effect that the mortgagor might con-
tinue the business as before and replenish the stock of goods
rendered the mortgage void as against the creditors whom
he claimed to represent because permission to do so was not
expressly given in the mortgage as provided in Section 3734,
Compiled Statutes, which section is as follows: "It shall
be lawful for the parties to any mortgage, bond, convey-
ance, or other instrument intended to operate as a mortgage
of personal property as provided by law, to insert therein
permission to the mortgagor to use, handle, operate, herd,
manage and control the property mortgaged, and to market,
sell and dispose of such portions thereof as may be neces-
sary in the course of business, or to preserve and care for
the same, and replace such property, or parts sold, with
other property of like kind or character, which property re-
placed may be purchased, either with the net proceeds of
the mortgaged property sold, or otherwise, all of which
shall be subject to the operation and effect of such mortgage,
bond, conveyance, or instrument intended to operate as a

mortgage. But unless permission is expressly given otherwise in the mortgage, the mortgagor shall pay over to the mortgagee all moneys received from the sale of any part of the mortgaged property aforesaid." Section 3727 is as follows: "Every mortgage, bond, conveyance or other instrument intended to operate as a mortgage of goods, chattels or personal property, which shall not be accompanied by immediate delivery and be followed by an actual and continued change of possession of the goods, chattels and personal property so mortgaged shall be absolutely void as against the creditors of the mortgagor, and as against subsequent mortgagees or purchasers in good faith, unless said mortgage, bond, conveyance or other instrument intended to operate as a chattel mortgage shall be filed as hereinafter provided." Section 3734 does not declare the mortgage void as between the parties thereto for failure to insert permission in the mortgage to continue the business as before, but directs that all money that accrues from the sales shall be paid over to the mortgagee in the absence of permission expressly given in the mortgage to apply the money otherwise. The failure to express the permission in the mortgage did not render that instrument void *ab initio*. The statute does not say so, but goes only to the application of the proceeds of the sales. We think the mortgage was valid as between the parties thereto within the contemplation of the sections quoted, and it having been properly executed that as between the parties thereto it came within the provision of Section 3732 id., which provides, "That any such mortgage, bond, conveyance or other instrument intended to operate as a mortgage shall be valid as between the parties, anything contained in this chapter to the contrary notwithstanding, until the debt thereby secured is fully paid." The different sections referred to were all enacted at the same time and as a part of the same chapter. (L. 1890-91, Ch. 7.)

When a mortgage is defective or is so worded as to accomplish that which is evidently prohibited by the statute as working a fraud, such mortgage should fall in so far as provided by the statute at the suit of one entitled to main-

tain a suit for that purpose. The mortgage here contains
no express provision as to replenishing the stock of goods
out of the proceeds of the sales which would be necessary
under the statute to render an agreement to that effect valid.
The proviso contained in Section 3734, above quoted, mod-
ifies and limits the declaratory part of the section. It will
be observed that as against creditors of the mortgagor the
parties to a chattel mortgage may stipulate certain things,
but in order that such stipulation may be lawful the stipula-
tion or permission must be expressly set forth in the mort-
gage. From the language used there is a clear implication
that unless the permission be expressly given in the mort-
gage the proceeds of all sales of the mortgaged property
must be applied to the payment of the debt secured by the
mortgage. But the material question here is what title and
right, if any, the plaintiff in error has to assail the mort-
gage on the ground stated. His title, if any, is derived
solely from possession of the property under the deed of
assignment and from no other source. To show the char-
acter of the law under which such assignment was made we
will refer to some of the provisions of the deed and of the
statute regulating such assignments. It is recited in the
deed of assignment "that I, C. H. Reeder, of the Town of
Dayton, Sheridan County, Wyoming, being unable to pay
my debts from my means as they become due, and wishing
to avail myself of the provisions of Chapter 212 of the
Wyoming Compiled Statutes, 1910, do hereby, in pursuance
of and in accordance with the provisions of said chapter of
said laws, hereby make a general assignment of all my prop-
erty in trust for all my creditors all my property, etc.,  *  *
*  *  to handle, deal in, sell and dispose of the same for the
benefit of the said creditors in the manner and as provided
in and under the laws of the State of Wyoming in such case
made and provided and to pay and distribute the proceeds
of the same in accordance with the said laws." Section
3366 being the first section of the chapter under which this
assignment was attempted says that "Any debtor or debtors
in embarrassed or failing circumstances, may make to one

or more assignees a general assignent of all his or their property, in trust for the benefit of his or their bona fide creditors; and all assignments hereafter made by such person or persons for such purpose, *except as provided for in this chapter, shall be deemed fraudulent and void.* The debtor is insolvent and in embarrassed and failing circumstances within the meaning of this chapter when he is unable to pay his debts from his own means as they become due." Section 3367 provides that the deed of assignment shall be signed and acknowledged by some person authorized to take the acknowledgment of deeds and within ten days from the execution shall be filed and recorded in the office of the county clerk and ex-officio register of deeds of the county in which the assignor resides, or has his place of business in case he be a non-resident of the state. Section 3368 provides that the deed shall contain a verified copy of the schedule of the property assigned, and Section 3369 provides how and when the assignee shall qualify and requires the assignee to file a certified copy of the assignment and schedule in the office of the clerk of the district court in the county in which the assignment is made. Section 3370 makes it the duty of the clerk to make proper record of the copy of the deed of assignment, schedule and undertaking of the assignee, and Section 3376 also requires him to file the returns of sales made under the oath by the assignee, etc. Provision is also made by other sections for appraisement of the property assigned. By Section 3372 the assignee after qualifying and complying with the other provisions of the chapter shall give notice by publication for three successive weeks, or by posting notices as therein provided, and within 30 days after entering upon the duties of his trust file under oath a full and complete inventory of "all the property real and personal, the rights, credits, interests, profits, and collateral securities which shall have come into his hands, or of which he may have obtained knowledge as belonging to the assignor." Section 3378 required the assignee to report to the court or judge the condition of the trust and Section 3383 provides that the claims of all cred-

itors shall be presented "under oath to the assignee for allowance" * * * * "prior to the expiration of six months from the date of the first publication required by this chapter," and unless he or they do so cannot participate in the distribution of the trust estate except upon application to and permission of the court. Section 3377 is as follows: "The court shall exercise a supervising power over the estate of the assignor, and may make all necessary orders in the interest of the creditors, for its control and management by the assignee before sale, and shall, after sale, have the power to compel the assignee to report the money in his hands for distribution; and shall, after the expiration of the time for presenting claims as hereinafter provided, compel distribution, whenever the assets are shown to be sufficient to pay ten per cent dividend upon the indebtedness; and such distribution may be ordered from time to time when on application of anyone interested it is shown to the court or judge thereof that there is a sufficient fund in the hands of the assignee to pay said dividend of ten per cent." It is provided that the assignee shall report his doings to the judge of the district court of the county (Sec. 3378) and the district court approves or disapproves the act of the assignee in the matter of the allowance or disallowance of claims (Sec. 3379) and shall try issues between creditors and the assignee in the matter of establishing claims. Distribution is made upon order and approval of the court (Sec. 3381). Section 3395 is as follows: "In cases where the assignor complies with the provisions of this chapter, any creditor accepting from the assignee any dividend arising from the property of the assignor to which he is entitled under any assignment under this chapter, shall release the assignor from all further liability on the claim or claims on which said payment may be made." In this case the record shows that the mortgagees were the only lien holders. The creditors here for whom the assignee attempts to defend this action had no lien upon the property either by contract, judgment or levy thereon of writ of attachment or execution, except that conferred, if any, by

the deed of assignment. The deed of assignment carried to the assignee only such rights as the assignor had in the property attempted to be conveyed. (Sec. 13, p. 655, 2 R. C. L.) It was not nor does it purport to be a common law assignment (Sec. 2, p. 644 of 2 R. C. L.) because it provided for the administration by the court of a trust attempted to be created under the provision of a statute which declares (Sec. 3366, *supra*) that all assignments other than as provided in this act shall be deemed fraudulent and void, and also requires (Sec. 3395, *supra*) that the creditors who participate in the trust fund shall release the unpaid balance of their claim. (5 Cyc. 290-291; 22 Cyc. 1262; *In re* John A. Etheridge Furniture Co., 92 Fed. 329, 1 Am. Bankr. Rep. 112; Patty-Joiner &c. Co. v. Cummins, 93 Tex. 598, 57 S. W. 566, 4 Am. Bankr. Rep. 269; Downes v. Parshall, 3 Wyo. 425, 26 Pac. 994.) The provisions of the statute above referred to make it an insolvency law which was suspended and under suspension by the National Bankruptcy Act of 1898, and it being an insolvency law then under the provisions of the national act all proceedings under it were void. The provisions of the state insolvency law were not binding upon the mortgagees so as to require them to recognize the assignee's claim of possession or of right to possession of the property attempted to be conveyed by the deed of assignment and which property was included in their mortgage. The mortgagees had a specific prior lien enforceable against the property in the hands of the mortgagor and also his assignee who rested his right to possession as against their lien upon a deed of assignment for the benefit of creditors under a suspended state insolvency law. (2 R. C. L., Sec. 14, p. 656; 22 Cyc. 1265.) As against such lienors the assignment will be treated as void. (4 Cyc. 222.) The filing and proving of the claims of the creditors as provided by such law would have no immediate effect as establishing a lien because of the suspension of the operation of the state insolvency law by the Federal Bankruptcy Act then and ever since in force.

It is not necessary to sustain this judgment to hold that the assignee's right of possession was void. It is sufficient to say that the assignee succeeded to and his rights were measured by those of his assignor and as between the parties to the mortgage the mortgagor could not avoid the mortgage. Indeed the fraud which is here complained of, to-wit: the verbal permission, consist of alleged acts against the creditors, none of whom, aside from the mortgagees, have a lien and for that reason are not in position to complain against these specific lienors. No greater rights passed to the assignee than those possessed by the assignor, and it follows that as upon the facts replevin could be maintained by the mortgagees against the mortgagor it can be maintained against his assignee as efficaciously as though the assignment had not been attempted.

We find no error in the record, and the judgment will be affirmed.                                        *Affirmed.*

POTTER, C. J., and BEARD, J., concur.